IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

SMITH GABRIEL,

                              Petitioner,                        **Report and Recommendation**

-vs-                                                             **No. 08-CV-6178(CJS)(VEB)**

IMMIGRATION AND CUSTOMS
ENFORCEMENT WILLIAM M. CLEARY,
District Director,

                              Respondent.

_____

## I.      Introduction

        *Pro se* petitioner Smith Gabriel ("Gabriel" or "petitioner") has filed a petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2241 claiming that he is being unconstitutionally

detained in the custody of the Department of Homeland Security/Immigrations and Customs

Enforcement ("DHS" or "the Government"). This matter has been referred to the undersigned

pursuant to 28 U.S.C. § 636(b)(1) for the issuance of, *inter alia*, a report and recommendation

regarding the disposition of Gabriel's petition and any dispositive motions.

        Gabriel moved for judgment on the pleadings against respondent. In his motion, Gabriel

alleged that including Gabriel's allegations that the state court criminal proceedings against him

were concluded. This Court then directed respondent to respond to Gabriel's motion by

providing updated information, and any relevant documentation, pertinent to  the disposition of

the rape-third charge against Gabriel in Broome County Court; Gabriel's custody status at this

time; and the status of DHS's efforts to obtain a travel document and the expected time required

to accomplish Gabriel's deportation.

        Respondent has provided the requested information. Upon review, the Court recommends

that the petition be dismissed as premature, without prejudice and with leave to renew, and that

Gabriel's motion for judgment on the pleadings likewise be dismissed.

## II.      Factual Background and Procedural History

Gabriel was placed in immigration removal proceedings by a Notice to Appear, dated

June 2, 1999, which charged him, pursuant to Immigration and Nationality Act ("INA") §

237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), with being subject to removal from the United

States as an alien who after admission in an unknown classification is present in the United

States in violation of the Act or any other law; who fraudulently or willfully misrepresented a

material fact for the purpose of procuring a United States passport pursuant to INA §

237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A), and who falsely represented himself to be a citizen of

the United States pursuant to INA § 237(a)(3)(D), 8 U.S.C. § 1227(a)(3)(D).  *See* Respondents'

Answer and Return, ¶ 4.

On May 23, 2002, an immigration judge ("IJ") ordered Gabriel removed from the United

States to Haiti. Gabriel appealed to the Board of Immigration Appeals ("BIA") which dismissed

his appeal on April 9, 2003. On October 11, 2007, Gabriel filed a motion to reopen which was

denied by the BIA on February 14, 2008. *See* Respondents' Answer and Return, ¶ 5.

On January 26, 2007, Gabriel was arrested in Binghamton, New York, and charged with

Rape in the 1st Degree in violation of New York State Penal Law Section 130.35. Gabriel was

subsequently indicted by a Broome County New York Grand Jury and charged with Rape in the

3rd Degree in violation of New York State Penal Law Section 130.25. *See* Respondents' Answer

and Return, ¶ 6.

While awaiting trial, Gabriel was arrested in Binghamton, New York, on April 4, 2007,

as a fugitive on a Warrant of Removal/Deportation, upon the execution of a criminal search warrant issued by the United States District Court for the Northern District of New York. At that time, Gabriel was placed in DHS custody pursuant to the Warrant of Removal/Deportation. *See* Respondents' Answer and Return, ¶ 7.

On May 14, 2007, the Honorable Patricia B. Mathews, Broome County Court Judge, issued a Writ of Production to DHS ordering Gabriel's appearance in Broome County Court, Binghamton, New York, in *The People of the State of New York v. Gabriel Smith a/k/a Smith Gabriel*, Broome County Indictment No. 07-125. *See* Respondents' Answer and Return, ¶ 8. Pursuant to that Writ of Production, Gabriel was transferred from the custody of DHS to the custody of the Broome County Sheriff's Office on May 25, 2007. *See* Respondents' Answer and Return, ¶¶ 8-9.

On May 31, 2007, DHS lodged an Immigration Detainer–Notice of Action against Gabriel at the Broome County Correctional Facility in Binghamton, New York. *See* Respondents' Answer and Return, ¶ 11.

On August 18, 2008, Gabriel filed a second motion to reopen which was denied by the BIA on September 16, 2008. Exhibit B, pp. 5-6.

On October 7, 2008, Gabriel filed a petition for review of the BIA's denial of his motion to reopen in the United States Court of Appeals for the Second Circuit. *See Gabriel v. Mukasey*, 08-4934-ag. Exhibit B, pp. 14-17.

Until November 25, 2008, Gabriel remained in the custody of the Broome County Sheriff pending disposition of the state court criminal charges against him; then, he was transferred from the custody of the Broome County Sheriff to the custody of DHS on November 25, 2008,

pursuant to the DHS detainer warrant. Exhibit B, p. 3. Respondent states that at the time of

transfer, the Broome County Sheriff provided DHS with no details regarding the disposition of

the state court criminal charges against Gabriel.

A representative of DHS contacted the Broome County Court Clerk's Office on

December 9, 2008; however, the Clerk could not provide any details regarding Gabriel's case.

Gabriel claims the criminal case against him was dismissed after a trial. Exhibit B, p. 10. Cheryl

LoTempio, Esq. of the United States Attorney's Office reports that after receipt of the Court's

order of January 9, 2009, she contacted Broome County Assistant District Attorney Torry

Schmitz who confirmed that Gabriel was acquitted of the criminal charges after trial and that the

record is sealed. *See* Exhibit B, p. 19.

Gabriel is currently held at the Buffalo Federal Detention Facility in Batavia, New York,

pending his removal from the United States.

### III.     Discussion

#### A.       General Legal Principles

INA § 241, 8 U.S.C. § 1231, governs the detention of aliens subject to final orders of

removal. It provides that, in general, "the Attorney General shall remove the alien from the

United States within a period of 90 days" of the final removal order, INA § 241(a)(1)(A), 8

U.S.C. § 1231(a)(1)(A), and that "[d]uring the removal period, the Attorney General shall detain

the alien," INA § 241(a)(2), 8 U.S.C. § 1231(a)(2). *See also Zadvydas*, 533 U.S. at 699-700. The

INA further provides that certain classes of aliens, including inadmissible aliens, such as Gabriel,

and criminal aliens, shall continue to be subject to "supervision" even after the 90 day period

expires if they have not yet been removed. INA § 241(a)(3),(6), 8 U.S.C. § 1231(a)(3),(6). The

INS has interpreted the term "supervision" to include detention, and has maintained in the past

that INA § 241 "sets no 'limit on the length of time beyond the removal period that an alien who

falls within one of the Section 1231(a)(6) categories may be detained.'" *Zadvydas v. Davis*, 533

U.S. 678, 689 (2001).

The Supreme Court rejected the INS's interpretation of INA § 241 to the extent that the

INS found that it permitted indefinite detention, finding that such a construction could not be

reconciled with the Due Process Clause of the Fifth Amendment. In order to save INA § 241

from unconstitutionality, the Supreme Court held that "once removal is no longer reasonably

foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. *Zadvydas*

recognized six months as a "presumptively reasonable"  period of time following the end of the

90-day removal period to allow the Government to accomplish removal. *Id.* at 701. As

respondent points out, *Zadvydas* did not hold that every alien who has been in detention for

longer than six months must be released:

> After this 6-month period, once the alien provides good reason to believe that
> there is no significant likelihood of removal in the reasonably foreseeable future,
> the Government must respond with evidence sufficient to rebut that showing. And
> for detention to remain reasonable, as the period of prior postremoval
> confinement grows, what counts as the "reasonably foreseeable future"
> conversely would have to shrink. This 6-month presumption, of course, does not
> mean that every alien not removed must be released after six months. To the
> contrary, an alien may be held in confinement until it has been determined that
> there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*  Following *Zadvydas*, the Government issued regulations providing for custody reviews of

aliens who have been in detention for more than six months following the issuance of a final

order of removal. *See* "Continued Detention of Aliens Subject to Final Orders of Removal," 66

Fed. Reg. 56967 (Nov. 14, 2001) (now codified at 8 C.F.R. Pts. 3 and 241) (providing that a

detainee who has been in post-removal order custody for more than six months may request the

agency for release on the asserted ground that there is "no significant likelihood of repatriation in

the reasonably foreseeable future").[1]

**B.      Analysis of Gabriel's Case**

Gabriel's order of removal became final on April 9, 2003, upon the BIA's dismissal of

his administrative appeal. However, as respondent argues, the 90-day removal period did not

commence on that date. This is because Gabriel was not "available" to be removed from the

United States–at the time, Gabriel was "detained or confined (except under an immigration

process)" by the Broome County Sheriff in the State of New York, pending disposition of the

state court criminal charges against him in Broome County Supreme Court. *See* 8 U.S.C. §

1231(a)(1)(B)(iii).[2]

Gabriel has alleged, and respondent has confirmed that these criminal proceedings were

---

[1]        The request for a custody review must include: (d) Showing by the alien. (1) Written request. An
eligible alien may submit a written request for release to the [Headquarters Post-Order Detention Unit ("HQPDU")]
asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the
reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country
willing to accept the alien. The alien may submit whatever documentation to the HQPDU he or she wishes in support
of the assertion that there is no significant likelihood of removal in the reasonably foreseeable future. (2) Compliance
and cooperation with removal efforts. The alien shall include with the written request information sufficient to
establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of
obtaining necessary travel documents. 8 C.F.R. § 241.13(d). In reviewing the request for release, the agency is
required to consider the history of the alien's efforts to comply with the order of removal. The agency also must
consider the history of the efforts by the agency to repatriate persons to the country in question, the reasonably
foreseeable results of those efforts, and the receiving country's willingness to accept repatriation. In addition, the
agency may also seek an opinion from the United States Department of State. 8 C.F.R. § 241.13(f). If the agency
finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of
repatriation in the reasonably foreseeable future, and that other evidence does not rebut that demonstration, then it
will order the alien released. 8 C.F.R. § 241.13(g)(1).

[2]        According to the statute, "[t]he removal period begins on the latest of the following:
(i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and
if a court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the alien is detained or
confined (except under an immigration process), the date the alien is released from detention or confinement). 8
U.S.C. § 1231(a)(1)(B).

terminated in Gabriel's favor: he was acquitted of the second degree rape charge. Gabriel

remained in state custody until November 25, 2008, at which time he was transferred to the

custody of DHS custody.  *See* Declaration of Christopher Jacobs ("Jacobs Decl.") ¶ 15, Exhibit

A.  On November 25, 2008, then, Gabriel became "available" to be removed from the United

States, and it is on that date that the 90-day removal period commenced. Thus, as respondent

points out, pursuant to INA § 241(a)(1)(B)(iii), the ninety-day period of removal has not yet

expired. *See* 8 U.S.C. § 1231(a)(1)(B)(iii); 8 C.F.R. § 241.4(g). Rather, the 90-day removal

period in Gabriel's case will expire on Monday, February 23, 2009. Under *Zadvydas*, Gabriel's

detention in DHS custody is presumptively reasonable for a further six months–in other words,

until Monday, August 24, 2009.

Respondent asserts that Gabriel's habeas petition, which was filed six months before the

commencement of the 90-day removal period, is premature. *Accord*, *e.g.*, *Shehata v. Ashcroft*,

2002 WL 538845 (S.D.N.Y. Apr. 11, 2002). Respondent also correctly points out that because

the 90-day period for removal has not expired, Gabriel's continued detention is in accordance

with INA § 241, 8 U.S.C. § 1231. Furthermore, because the presumptively reasonable six-month

post-removal period has not het commenced, the issues relating to indefinite detention discussed

in *Zadvydas* are not yet implicated in his case.

In a procedurally similar case, courts in this district have concluded that an analysis of

whether the petitioner will be repatriated in the reasonably foreseeable future is not required

because the petitioner's period of confinement had not yet exceeded that deemed presumptively

reasonable by the Supreme Court. *E.g.*, *Tam v. Department of Homeland Security*, No.

05-CV-473S, 46-157-614, 2006 WL 839425, at *2 (W.D.N.Y. Mar. 28, 2006) (Skretny, D.J.).

However, even if Gabriel's claim of unlawful detention were ripe at this time, I would

recommend concluding that he has not fulfilled his burden under *Zadvydas* of showing good

reason to believe that there is no significant likelihood of his removal in the reasonably

foreseeable future. Even assuming, *arguendo*, that he had made such a showing, DHS has

responded with evidence sufficient to rebut this showing, given the particular procedural posture

of Gabriel's case. Specifically, respondent's submissions show that DHS has actively been

pursuing travel documents for Gabriel. However, respondent states, due to serious damage in

Haiti caused by Hurricane Gustave in September 2008, all removals to Haiti had been

temporarily halted by DHS on September 19, 2008, Therefore, although on December 11, 2008,

DHS deportation staff at the Buffalo Federal Detention Facility prepared a presentation packet to

request a travel document for Gabriel's removal to Haiti, *see* Jacobs Decl., Exhibit B, p. 2,  the

travel document request for Gabriel could not be pursued at the time it was prepared. On

December 9, 2008, DHS resumed the removal of noncriminal Haitian aliens in possession of a

passport via commercial airlines. Respondent states, "DHS anticipates that it will resume the

removal of all  Haitian aliens in the near future, and that Gabriel will be removed from the

United States in the reasonably foreseeable future." In addition, Gabriel received notification

from DHS on January 14, 2009, that his custody status would be reviewed on or about February

25, 2009. Jacobs Decl., Exhibit B, p. 1.[3] Therefore, it seems likely that DHS will be able to

---

[3]     Parenthetically, the Court notes that according to respondent's most recent submissions, on
January 16, 2009, Gabriel filed a motion to reopen with the BIA. Jacobs Decl., Exhibit B, p. 18. However, the fact
that a § 2241 petitioner has a motion to reopen pending does not require that his deportation be delayed. *Ahmad v.
Gonzales*,  204 Fed. Appx. 98, 99, 2006 WL 3228809, at **1 n. 1 (2d Cir. Nov. 7, 2006) (citing 8 C.F.R. § 1003.2(f)
(providing that the filing of a motion to reopen usually "shall not stay the execution of any decision made in the
case"); *see also Michael v. INS*, 48 F.3d 657, 662 (2d Cir. 1995) ("Where an alien does not directly seek review of a
final deportation order in the court of appeals, but instead moves to reopen his or her administrative deportation
proceedings, the automatic stay described above will not take effect until after the motion to reopen has been
adversely determined and the alien timely seeks judicial review.") (citing *Vlassis v. INS*, 963 F.2d 547, 548 (2d Cir.

secure travel documents from Haiti for Gabriel in the reasonably foreseeable future. Because

neither the 90-day removal period has not expired, and the post-removal six-month

presumptively reasonable *Zadvydas* period has not yet commenced, I recommend finding that

petitioner's claim of illegal detention is premature at this juncture. Furthermore, I recommend

finding that he has not met his initial burden under *Zadvydas*. However, "[i]f it subsequently

appears that [Gabriel]'s removal is no longer reasonably foreseeable, he may file another

petition." *Kassama v. Department of Homeland Sec. (USICE)*, 553 F. Supp.2d 301 (W.D.N.Y.

2008) (Siragusa, D.J.).

## IV.    Conclusion

For all of the foregoing reasons, I recommend that Gabriel's habeas petition be dismissed

without prejudice, with leave to re-file at a later date. As petitioner has failed to make a

substantial showing of the denial of a constitutional right, I recommend that a certificate of

appealability not issue. *See* 28 U.S.C. § 2253(c).

/s/ *Victor E. Bianchini*

_____
                    VICTOR E. BIANCHINI
                United States Magistrate Judge

Dated: February 23, 2009
          Rochester, New York

---

1992) (*per curiam*) (holding that motion to reopen immigration proceedings does not stay the execution of a
deportation order)).

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby **ORDERED** that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the

Report & Recommendation to all parties.

Any Objections to this Report & Recommendation must be filed with the Clerk of this

Court within ten (10) days after receipt of a copy of this Report & Recommendation in

accordance with 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b), and Western District of New York

Local Civil Rule 72.3(a).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

**WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME**

**WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER**

**ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN**. *Thomas v. Arn*, 474

U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *F.D.I.C. v. Hillcrest Associates*, 66 F.3d 566

(2d Cir.1995); *Wesolak v. Canadair Ltd.*, 838 F.2d 55 (2d Cir.1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case

law and/or evidentiary material which could have been, but was not, presented to the Magistrate

Judge in the first instance. *See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale*

*Electric Co.*, 840 F.2d 985 (1st Cir.1988).

Finally, the parties are reminded that, pursuant to Western District of New York Local

Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed

findings and recommendations to which objection is made and the basis for such objection and

shall be supported by legal authority." The parties are advised that their failure to comply with

the provisions of Local Rule 72.3(a)(3) may result in the District Court's refusal to consider the

objection.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:  February 23, 2009
        Rochester, New York