UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SMITH GABRIEL,

                                              Petitioner,          No. 08-CV-6178 CJS

   -vs-

                                                                     DECISION AND ORDER

WILLIAM M. CLEARY, District Director,
Immigration and Customs Enforcement,

                                              Respondent.
_____

APPEARANCES

For Petitioner:                    Smith Gabriel, *pro se*
                                         A75997296
                                         Buffalo Federal Detention Center
                                         4250 Federal Drive
                                         Batavia, New York 14020

For Respondent:                Gail Y. Mitchell, Esq.
                                         Assistant United States Attorney
                                         138 Delaware Avenue
                                         Buffalo, New York 14202

INTRODUCTION

      This is an action pursuant to 28 U.S.C. § 2241 in which Petitioner contends that his continued detention, pursuant to Section 241 of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1231, pending his removal from the United States pursuant to a final order of removal, is unlawful. Now before the Court are Petitioner's application for judgment on the pleadings (Docket No. [#8]), and a Report and Recommendation (Docket No. [#12]) by the Honorable Victor E. Bianchini, to which Petitioner has filed Objections (Docket No. [#18]). Because the Court finds that Petitioner's continued detention satisfies INA § 241 and the due process standard set forth in *Zadvydas v.*

1

*Davis*, 533 U.S. 678, 121 S.Ct. 2491 (2001), Petitioner's motion and objections are denied, the Report and Recommendation is adopted, and this action is dismissed.

BACKGROUND

Petitioner Smith Gabriel ("Petitioner") is a native and citizen of Haiti. In or about 1986, Petitioner entered the United States illegally, by using the passport and visa of another person. On February 20, 1999, Petitioner was questioned by United States Customs Officials in Alexandria Bay, New York, after he was refused admission to Canada. Petitioner was in possession of marijuana and various forged identification documents, including a New York State identification card. Petitioner claimed to be a United States citizen named Terrance Steward, and provided various inconsistent bits of biographical information. Customs officials eventually determined Petitioner's identity, and that he had an outstanding arrest warrant for failure to appear for trial in Springfield, Massachusetts, in 1991, on a charge of possessing crack cocaine with intent to distribute.

The U.S. Department of Justice, Immigration and Naturalization Service ("INS"), charged Petitioner under the Immigration and Nationality Act ("INA") with being subject to removal. Specifically, Petitioner was charged with violating INA § 237, 8 U.S.C. § 1227, sub-sections (a)(1)(A), (a)(1)(B), and (a)(3)(D). On May 22, 2002, an Immigration Judge ordered Petitioner removed from the United States. Petitioner appealed that determination, however, on April 9, 2003, the Board of Immigration Appeals ("BIA") dismissed the appeal for failure to prosecute.

Petitioner's location and activities between 2002 and 2007 are unclear in the record, but he was not in INS custody. On April 5, 2007, Petitioner was arrested in

Binghamton, New York, by officers employed Immigrations and Custom Enforcement's ("ICE") Fugitive Operations Unit.[1] At that time, Petitioner was being prosecuted, in Broome County, New York, for Rape in the Third Degree. Petitioner was subsequently indicted for Rape in the Third Degree by a Grand Jury in Broome County. On May 14, 2007, the Honorable Patricia B. Mathews, Broome County Court Judge, issued a Writ of Production for Petitioner. On May 25, 2007, pursuant to Judge Mathew's writ, Respondent transferred Petitioner to the custody of the Broome County Sheriff. On May 31, 2007, the U.S. Department of Homeland Security ("DHS") lodged an Immigration Detainer Notice at the Broome County Jail. Petitioner remained in the custody of the Broome County Sheriff until November 25, 2008, when the criminal charges against him were terminated.[2][3] On November 25, 2008, Petitioner was transferred to the custody of

---

[1] Petitioner alleges that this was the first time that he learned that his appeal was dismissed some four years earlier. (Petitioner's Response and Return, Docket No. 7 at 4, ¶ 12) ("If I had known about the dismissal of my appeal before hand, I could have seek administrative remedies without being detained for I have been freed on $ 20.00 bond awaiting my appeal." [sic]).

[2] Petitioner suggests that during the pendency of the criminal charge against him, he was actually in Respondent's custody, because of the immigration detainer. (Petitioner's Objections, Document [#18], at 4) ("Gabriel was released on his own recognizance pending the criminal case in Binghamton, NY, he was wrongly accused of. The immigration detainer lodged against him did curtail his liberty."). However, if Petitioner was released on his own recognizance, it was during the period that the rape charge was pending against him, *prior to his arrest by ICE*, and prior to the Broome County Grand Jury indictment. Subsequent to the indictment, and until the completion of the criminal proceeding, Petition was in the custody of Broome County. In that regard, on February 20, 2008, Petitioner's defense counsel on the rape charge wrote to Petitioner as follows: "[I]t is my understanding that there is a federal detainer holding you at the jail. This has effectively precluded us from raising a bail argument at the county level. If we were to prevail in getting you released on bail at the county level, it is unlikely that this would alter the fact that you have a federal detainer. The net result would be that you would no longer be credited for county time (and potentially state time)." (Docket No. [#7-3] at 31, Letter of Mark J. Loughran, Esq. dated February 20, 2008). This shows that Petitioner's defense counsel made a strategic decision not to seek bail from the Broome County Court. Therefore, Petitioner was in the custody of Broome County between May 25, 2007 and November 25, 2008.

[3] Petitioner also alleges that Respondent is at fault for failing to attempt to obtain travel documents during the period between April 4, 2007, when he was taken into custody by ICE, and May 25, 2007, when he was taken into custody by Broome County. (Petitioner's Objections, Docket No. 18, at ¶ ¶ 13-14). Presumably, though, Respondent had no way of knowing how long the pending criminal case, including any sentence, was going to take. Therefore, it would not have made sense for Respondent to obtain a

3

DHS, pursuant to the detainer warrant.

On December 11, 2008, DHS prepared a presentation packet to request a travel document in order to remove Petitioner to Haiti. However, because of damage caused by Hurricane Gustave in September 2008, DHS temporarily halted removals to Haiti. Consequently, DHS did not attempt to obtain travel documents at that time. Subsequently, in December 2008, DHA resumed the removal of non-criminal Haitian aliens with passports, and DHS anticipates that it will be able to remove Petitioner "in the reasonably foreseeable future." (Affidavit of Christopher M. Jacobs, ¶ 23).

On January 16, 2009, Petitioner filed a motion with the BIA to reopen his case. On February 23, 2009, the BIA granted the request to reopen, to the extent that it re-issued its April 9, 2003 decision dismissing the action, effective February 23, 2009. (Petitioner's Objections, Docket No. [#18], at 2) ("[R]espondent's motion to reissue our previous decision in his removal proceedings is granted. Accordingly, the Board's decision dated April 9, 2003, attached hereto, is hereby reissued and shall be treated as entered as of today's date (February 23, 2009)."). Presently, Petitioner has an appeal pending before the United States Court of Appeals for the Second Circuit, challenging the final order of removal.Id. *Id*. ("Gabriel has filed a petition for review with the Court of Appeals for the Second Circuit to enjoin this miscarriage of justice. Docket No. 09-1542-ag *Gabriel v. Holder*, presently pending."). In connection with his petition for review, Petitioner asked the Second Circuit for a stay of removal, which application is currently pending.

---

travel document at that time. In any event, even if Respondent had obtained a travel document, and assuming that the travel document would not have expired, the situation in Haiti had changed as of November 2008, as a result of Hurricane Gustave, as discussed further below.

4

On April 21, 2008, while he was still in the custody of Broome County, and prior to the termination of his criminal case, Petitioner commenced the subject action. In relevant part, Petitioner alleged that he had been detained by Respondent since April 4, 2007. Petitioner requested that he be immediately released pending completion of his deportation, or in the alternative, that he be granted an individualized bail hearing. In response, Respondent argued that Plaintiff was not in federal custody, but rather, was still in the custody of Broome County. Respondent further stated that the statutory removal period would not commence until after plaintiff was released from state custody, and that consequently, the petition was "not ripe for review." Later, after Petitioner was returned to Respondent's custody pursuant to the detainer, Respondent supplemented its opposition papers, arguing that the statutory removal period had not begun to run until Petitioner was returned from state custody, that such period had not expired, and that the petition should therefore be denied.

On February 23, 2009, Magistrate Judge Bianchini issued a Report and Recommendation (Docket No. [#12]), recommending that the petition be dismissed as premature, without prejudice and with leave to renew. Judge Bianchini determined that Petitioner's order of removal became final on April 9, 2003, but that the removal period did not begin on that date, since Petitioner was not available to be removed, in light of the criminal prosecution against him. Judge Bianchini further found that upon Petitioner's return to federal custody on November 25, 2008, Petitioner again became available for removal, and the removal period commenced. Moreover, Judge Bianchini found that the removal period had not expired, and that the petition should be denied as premature. *Id*. At 7 ("[T]he 90-day removal period in [Petitioner's] case will expire on

Monday, February 23, 2009. Under *Zadvydas*, [Petitioner's] detention . . . is presumptively reasonable for a further six months– in other words, until Monday, August 24, 2009."). And finally, Judge Bianchini found that even if the six-month period had expired, Petitioner had not carried his burden, under *Zadvydas*, of showing that there was no significant likelihood of his removal in the reasonably foreseeable future. To the contrary, Judge Bianchini determined that it seemed likely that Respondent would be able to secure travel documents from Haiti in the reasonably foreseeable future. *Id*. at 8-9.

On June 1, 2009, Petitioner filed objections (Docket No. [#18]) to the Report and Recommendation.[4] Essentially, Petitioner maintains that the removal period began to run on May 9, 2003, and that his continued detention is unconstitutional.

## DISCUSSION

Petitioner brings this action pursuant to 28 U.S.C. § 2241(c)(3), which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). The specific legal principles applicable to Petitioner's claim are clear:

> INA § 241, 8 U.S.C. § 1231, governs the detention of aliens subject to final orders of removal. It provides that, in general, "the Attorney General shall remove the alien from the United States within a period of 90 days" of the final removal order, INA § 241(a)(1)(A), 8 U.S.C. § 1231(a)(1)(A), and that "[d]uring the removal period, the Attorney General shall detain the alien," INA § 241(a)(2), 8 U.S.C. § 1231(a)(2). It further provides that certain classes of aliens, including inadmissible aliens and criminal aliens, shall

---

[4]The Court granted Petitioner an extension of time to file his objections. (Decision and Order, Docket No. [#17]).

6

continue to be subject to "supervision" even after the 90 day period expires if they have not yet been removed. INA § 241(a)(3),(6), 8 U.S.C. § 1231(a)(3),(6). The INS has interpreted the term "supervision" to include detention, and has maintained in the past that INA § 241 "sets no 'limit on the length of time beyond the removal period that an alien who falls within one of the Section 1231(a)(6) categories may be detained.' " *Zadvydas v. Davis*, 533 U.S. 678, 689, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (quoting Brief for Petitioners in *Zadvydas*, p. 22).

In *Zadvydas*, the Supreme Court was faced with the challenge of reconciling INA § 241's apparent authorization of indefinite executive detention with the Due Process Clause of the Fifth Amendment. In order to save § 241 from unconstitutionality, the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699, 121 S.Ct. 2491. The Court stated that detention is presumptively reasonable for six months following a final removal order, and that, after the first six months, detention violates § 241 if (1) an alien demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing. *Id.* at 701, 121 S.Ct. 2491.

*Wang v. Ashcroft*, 320 F.3d at 145 -146 (footnotes omitted). As stated by the majority in

*Zadvydas*,

> [a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas v. Davis*, 533 U.S. at 701, 121 S.Ct. at 2505. On one hand, to meet his burden, the alien is not required "to show the absence of *any* prospect of removal - no matter how unlikely or unforeseeable." *Id.*, 533 U.S. at 702, 121 S.Ct. at 2505. On the other hand, the alien does not prevail merely be demonstrating the absence of a repatriation agreement between the U.S. and his home country, where there is evidence

7

that future negotiations between the countries may result in such an agreement. *Id.*[5]

In the instant case, the Court agrees with the Report and Recommendation's determination that the petition should be dismissed as premature. Significantly, however, as discussed above, the BIA re-issued its decision dismissing Petitioner's appeal of the final order of removal on February 23, 2009, the very same day that the Report and Recommendation was issued. As a result, Judge Bianchini was not aware of the BIA's action. If he had been aware, it would have made his job much simpler, inasmuch as the BIA essentially re-set the date upon which the removal order became final, to February 23, 2009. Because of that, the removal period did not begin to run until February 23, 2009.

As to that, "[a]n order of removal is 'final' upon the earlier of the BIA's affirmance of the immigration judge's order of removal or the expiration of the time to appeal the immigration judge's order of removal to the BIA." *Chupina v. Holder*, — F.3d — , 2009 WL 1796076 at *3 (2d Cir. Jun. 25, 2009) (citing 8 U.S.C. § 1101(a)(47)(B)(i), (ii)). Where the BIA dismisses an appeal, the order of removal becomes final on the date of the dismissal. *See, Nolasco v. U.S.*, 358 F.Supp.2d 224, 226 n.2 (S.D.N.Y. 2004). Where the BIA re-issues a decision, the order of removal becomes final on the re-issue date. *See, Lewis v. Gonzales*, 481 F.3d 125, 129 (2d Cir. 2007) ("Here, the BIA issued its final order of removal on May 6 when it reissued its decision.") (citation omitted). Consequently, in the instant case, Petitioner's removal period began on February 23,

---

[5]In applying these principles of law, the Court is required to construe the *pro se* Petitioner's papers liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

2009, when the BIA re-issued its decision.[6] It is very clear, then, that the removal period has not expired.

Additionally, the Court agrees that Petitioner has not shown good reason to believe that there is no significant likelihood of his removal to Haiti in the reasonably foreseeable future.

## CONCLUSION

For the foregoing reasons, Petitioner's application for judgment on the pleadings (Docket No. [#8]) and his Objections (Docket No. [#18]) are denied, the Report and Recommendation (Docket No. [#12]) is adopted, and this action is dismissed. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right.

So Ordered.

Dated: Rochester, New York
     August 3, 2009

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[6]Petitioner asked the BIA to reissue its decision, so that he could take advantage of the later date and pursue an appeal. On the other hand, for purposes of this habeas petition, he wants to use the May, 9, 2003 date, so that he can argue that the removal period has expired. The Court rejects Petitioner's attempt to "have it both ways."